Good morning, ladies and gentlemen. Our first case for this morning is United States v. Debra Schultz, and we'll hear from Mr. Van Zandt. Good morning, Your Honor, and may it please the Court. There are two particular issues I'd like to use my short time to talk about today that I'd like to develop a little bit further. The first issue is the question of disparity of sentencing, which was discussed at the sentencing hearing. The second has to do with the obstruction enhancement under Section 3C1.1. Turning first to the disparity question, this is something that, as a defense counsel, we run into quite often during sentencing hearings, and that's identifying what sentences are appropriate to look at in other cases to discuss disparity of sentencing under 3553A. What's interesting about this case is that trial counsel at sentencing commissioned a report that looked at sentences for fraud cases under 2B1.1 in this circuit and particularly in the Northern District of Illinois and presented that to the district court in support of his argument for sentencing. Now, the district court, however, rejected this out of hand, and for interesting reasons. What ultimately the district court decided was none of the other cases that had been identified in the report identified whether or not the obstruction of justice enhancement had been applied. But, you know, let me just interrupt you here and say, you say he dismissed it out of hand. The district judge certainly knew that this was an argument you were making. He made the point, which strikes me as a valid one, that it was not clear why the sentences in these other cases were where they were. Were they because there was an obstruction enhancement? Did it start out higher and go lower for some kind of minor participant? There were just a lot of details, and so he didn't find it all that useful in his consideration, and you would certainly agree that the district judge has a lot of discretion in choosing a sentence. He knew you were making a disparity argument, but he just didn't find it compelling. I will absolutely agree with that, Your Honor, and the reason I wanted to talk about that this morning is that the problem here is, as trial counsel mentioned during the sentencing argument, that kind of granularity of data is simply not available to defense counsel, and it creates somewhat of an impossible burden. But it doesn't if you buy what we have said before, which is that the proper application of the sentencing guidelines themselves is a big step in the direction of national uniformity. Then all we need to be sure of is that these guidelines, Ms. Schultz's guidelines, were correctly computed. As far as co-defendants, I mean, I think we've moved to the point, obviously, the district judge can look at that if the judge is so inclined. So, yes, I realize the kind of granularity that maybe you thought he was looking for isn't there, but it's not really necessary. Well, what's interesting about this particular case, Your Honor, and in this case, the district judge did look at Mr. Murph's sentence. So he was talking about the micro level as well as the macro level, and by rejecting the report that was put out, the district judge said, look, what I've got is I've got the micro level, which is the co-defendants in this case, and I've also got the macro level, which is the sentencing guidelines. And that takes us to the more interesting question. But before you get there, even if what you're saying is true, that you don't have access to the granular level, or you should be presenting that, did trial counsel make any effort in the Northern District of Illinois, or where the case took place, to go on to CMECF and look at the other fraud defendants that you were attempting to compare to see if the obstruction of justice enhancement had been given on those defendants? Because while maybe he couldn't do it nationally, he or she certainly could do it at the local level. On a case-by-case basis. As far as I know, no, Your Honor. This issue came up at the sentencing hearing. It wasn't something that was addressed or raised prior to. And I think that's a fair point. And a lot of why I'm bringing this up is, as a defense counsel at the trial level, that's something that defense counsel here and defense counsel in general are trying to figure out, is how to get the best information in front of the district court judge. And the judge did say this was very interesting and very helpful for him, or very interesting to read, but ultimately not helpful in determining whether or not, what he should do about this. And that's because he didn't have this particular data. That's not something that defense counsel could know prior to, and this is an unusual case. But certainly defense counsel in putting that together could have found that out for the Northern District of Illinois. Because the point of unwarranted disparities in 3553 is to make sure that you are comparing equals to equal. And if you have somebody who gets an obstruction of justice versus somebody who does not have that enhancement, that's not equal to equal. And that's a fair point, Your Honor, and I think that's what the district judge was saying. The question is, what does defense counsel know going into this, and what can defense counsel do to get that information out there? Oftentimes in sentencing cases, that is something that both the government and defense does, is look at other cases in the district to identify what may or may not be available. And the trick is, with things like this where we've got multiple enhancements and multiple different kinds of things that we're looking at, is what level of granularity do we need to become relevant for disparity analysis? And that's why I brought this up today and wanted to talk about it. It's one of the smaller points in the brief, but it is an issue that is significant, and I think this Court needs to be addressing. This is an unusual case because we actually do have a report where they went to the expense of finding this other information out there. But that leads to a different point, or sort of a related point, regarding the guidelines themselves. And this is something that was brought up in the brief, and for the Court's awareness, there was a case, United States v. Carl Moose, that came out last week that dealt with very similar issues, so I just wanted to make the Court aware of that. Thank you. But largely the question here and the difficulty that we have in determining this disparity analysis is we've got these micro-level co-defendants, and we've got this macro-level, which the district court was talking about in the sentencing guidelines, for fraud offenses under 2B.1.1, there is no real empirical evidence for those sentencing guidelines, and that's the larger point. So the question that I have here and the reason I wanted to talk about it is what does defense counsel do when we're talking about disparities? What is the evidence that we need to show to bring this to the district court's attention? And the issue here is, going back to Ms. Schultz, defense counsel simply didn't have access to that level of granularity the district court wanted. He didn't, but I just want to take this back to maybe the real world. A lot of defense counsel are making arguments about the lack of empirical support for different parts of the sentencing guidelines, and thus far all the signals from the Supreme Court as well as our fellow circuits are that if the sentencing commission has come up with some guidelines, then the district judge is at least entitled to follow those guidelines. Now, of course, this judge goes way below the guidelines, and so I'm not sure if it's a substantive unreasonableness point, but that's a heavy lift for a sentence that's this far below the guidelines range, or whether there's a procedural flaw in the entire sentencing calculation system that you're trying to suggest. And I will agree it's certainly a heavy lift, Your Honor, and that's why this has been brought up, and I think this is probably the fourth time I've been with this court talking about it, but the ultimate question is it moves the goalposts. When we're talking about situations where the guidelines themselves are artificially inflated, the district court here is certainly focused on I need to look at what the guidelines say, and if the guidelines are— And Gall says that's what he has to do. Absolutely. It has to start there. Absolutely. And he can go under 3553, which, of course, is what he does, to pull it down to 21. Yeah, it was a pretty massive discount, wasn't it? It was. I mean, it was down to 21 months. I mean, he clearly recognized the lesser culpability compared to Hanson, but said the culpability, it doesn't take it down to where a non-custodial sentence is warranted. And I certainly agree with that, Your Honor. And, again, I recognize the heavy lift on that because of the standard of review, but that also brings us back to the obstruction of justice issue, and that's ultimately what the trial court relied very heavily on in altering the— in deciding what the sentence was and saying, you know, Ms. Schultz is much more culpable than Mr. Murph because of this obstruction issue. That then creates the question of was that guideline, and shifting gears a little bit, was that guideline properly applied? But didn't the judge say that even if he had inappropriately applied that guideline, that he would have given the same sentence? He did, Your Honor. It doesn't take it down of your argument. And that's the trouble here, is because based on the findings of, I find the guidelines accurately reflect this, and even if I had found the guideline wasn't appropriately applied, I still would have given the same sentence. The sentence itself was driven by the obstruction issue, and if there's no obstruction, that creates a significant logical problem here. How would it be logical, though, under 3553A, when you're supposed to look at the history and characteristics of the individual? And if the judge, which the judge found here, that the obstruction was part of the problem, isn't that a 3553A issue, not a guideline issue? Had the district court explicitly found that, Your Honor, I would certainly agree. It does not appear from the statements the district court made that it then considered this under 3553A. It was simply a statement. But he talked about it when talking about the defendant's history. And I'm thinking of the written statement, Your Honor. I may be conflating the issue. I'm talking about when he imposed sentence. Yes, when he imposed sentence, he did. He certainly did. And that is fine. I believe I have more to say. You are over your time. Okay, I'm sorry. You should finish answering the judge's question and then you can sit down. Certainly, Your Honor. I think the issue here was he did say at some point that the guidelines accurately reflect all of the aggravating factors here. And that's kind of my overall charging point there, is that he did consider it specifically under the guidelines, and it's not clear that it was considered under 3553A, if that makes sense. Okay. Thank you. Thank you, Your Honor. Thank you. Yes, Ms. Kostanek. Good morning, and it may please the Court. The district court's sentence imposed upon the defendant was both procedurally sound and substantively reasonable. The sentence was about 45% of the low end of the guidelines. Defense counsel focuses his argument today on disparities that are somewhere between the micro and the macro level. To the extent that he's arguing a procedural deficiency at the sentencing, that argument is without merit. The district court did not, as Chief Judge Wood noted, dismiss this study out of hand. He said what I understand this court to be saying, that there are inherent flaws that are not comparing apples to apples or oranges to oranges by taking a nationwide study of fraud defendants that doesn't take into account the facts of those crimes, whether there was obstruction, whether there was acceptance, the loss amounts, and other kind of inherent limitations of looking at defendants at that level. The district court also noted properly that according to that study, a number of the defendants, a large percentage of those defendants, received below guideline sentences. The district court noted that he thought that a guideline sentence was too high in this case in the context of that discussion and indicated that that's something that he would take into account. Can you remind me, obviously the obstruction pops the guideline level up to, had that not been imposed, 21 months was still a sentence that would have been consistent, right? Well below the guidelines, Your Honor. So it would have dropped her down two levels. Her guidelines range with obstruction was 46 to 57. Two levels below, I believe, was around 36 to whatever the top end of that range is. So 21 is still low. It is, Your Honor, and it's almost about half the bottom of what that guidelines range would have been. The obstruction argument was taken into account, or her conduct was, in imposing sentence. I do not agree that it heavily drove that sentence. The district court made a very thorough record, considering both aggravating and mitigating circumstances under 3553A. It appropriately considered that even though the defendant here was less culpable than her co-defendants in terms of loss amount and the amount of money that she actually pocketed, that her cover-up ended up being much worse than those co-defendants. He was disturbed by the use of the minor as well, I think. The use of the minor when they were approached by the IRS about the money that her son owed as part of this scheme. Her and Hanson conspired together to continue to cover it up by stealing additional money. She never accepted responsibility. Even throughout the context of the sentencing hearing, she continued to deny culpability. She has the obstruction enhancement for the false handwriting exemplars, and in combination with the seriousness of the offense and balanced with the mitigating factors, it resulted in a below-guideline sentence that is very much reasonable. It was after sentencing that the judge in the docket entry indicated that even if he had wrongly calculated the guidelines, he would impose the same sentence. He had not said that during the sentencing. Is that something the court can consider? I do think that the court can consider it as a clarification. The defense counsel focuses, especially in the reply brief, on the order accompanying the bond pending appeal,  jurisdiction had transferred to this court. The docket entry, however, was entered the same day as the sentencing. In the event that it was inconsistent with the oral ruling at sentencing, I think we'd have a different case. But here, all the district court did, really, is calculate the guidelines with those additional four points, use of a minor and obstruction, taken off to explain that the sentence would still be below the guidelines and would be justified by all the 3553A factors that were discussed at sentencing. And so the government believes it is proper for this court to consider it as a clarification. And for that reason, even if there's error here, it obviously would be harmless. And I think you're saying this, but it's a clarification that's completely consistent with the weight or lack thereof that Judge Dow seemed to place on the obstruction when he went through the 3553 factors, correct? Yes, and I do believe he did go back through the obstruction in that context, not only in deciding the enhancement itself, but saying, you know, even if this legally didn't apply, here are the facts of this case, and it warrants under 3553A, you know, the sentence that I'm imposing. And it's coupled with this idea that the cover-up was far more serious in the context of the disparity arguments and other arguments that were being made by the defendant at sentencing. Yes, Your Honor. If there are no questions, the government asks that this court affirm the defendant's sentence. I see none, so thank you very much. And if you would like one last minute, Mr. Van Zandt, I will let you wrap up. Just one very brief point as to the question when the docket entry was entered with the statement of reasons and the point of clarification. Part of the problem that we've had in this case is this whole discussion of whether or not the 3553A factors were justified with the obstruction enhancements. That's something we could have addressed at sentencing. The fact that it was added in a written statement after the sentencing was completed and then further elaborated on in the response or the judge's order on the motion for bond, that creates significant problems for defense counsel. These are things that could have been addressed and clarified at the sentencing hearing. They were not, which is largely why I have to bring them up here today. If there are no further questions, I will... All right, thank you very much. The case will be taken under advisement.